"I give and bequeath unto my brother, John L. Miller, three negroes, Pompey, Cheyney and Clarissa, and their future increase to him and his heirs forever."
"I will that all my just debts and funeral expenses be paid by my executors, out of my property, or the money arising by the sale of such asmy executors may deem necessary to be sold."
That the tract of land devised to Robert Fleming, contained five hundred acres, and the stock in trade bequeathed to him, amounted to fifteen hundred dollars: that Robert Fleming was an alien, incapable of holding lands.
That some short time after the death of the testator, James G. Brehon recovered a judgment against Robert Fleming and Marmaduke Johnson, in Warren County Court, for one thousand pounds, or thereabouts, sued out his execution thereon, and the money was about to be raised out of the property of Johnson; to avoid which, and to indemnify Johnson against the payment of this money, it was agreed between Robert Fleming, Robert H. Harwell and Johnson, that the land devised to Fleming should be sold to Johnson for one thousand pounds or thereabouts; that in pursuance of this agreement Johnson discharged Brehon's judgment, and Fleming and Harwell, as executors of the last will of Thomas Miller, executed to him a deed for the land. That the parties pretended publicly, that this sale was made for the purpose of paying the debts of Thomas Miller: but in fact, it was made for no other purpose than to discharge Brehon's judgment, and to keep Johnson indemnified.
That in consequence of this sale, and the application of the purchase money to the payment of the debts of Fleming, the debts of the testator were left unpaid. That Fleming soon afterwards died, intestate and insolvent. That (197) since his death, the creditors of Thomas Miller had sued Robert H. Harwell, the surviving executor, and recovered judgments to the amount of five hundred pounds and more; to satisfy which, the three negro slaves bequeathed to the Complainant, had been sold by Harwell, the executor, and purchased by *Page 152 
William Miller, guardian to the Complainant, at the price of $1,123: That the said purchase was for the benefit of the Complainant, and that William Miller gave his own bond for the purchase money, payable on the ___ day of ___. The bill prayed that Harwell, the executor, might be decreed to deliver up to Complainant, William Miller's bond: that he and Johnson might be decreed to pay to the creditors of Thomas Miller, their respective demands, at least to the amount equal to the value of the land sold to Johnson, in order that such payment might be applied in exoneration of the specific legacy bequeathed to the Complainant: and that Complainant might have such other relief as in Equity he was entitled to.
To this bill, Harwell and Johnson demurred, and, for cause of demurrer, shewed, that it appeared by the Complainant's own shewing, that he was not interested in the question made in the bill, relative to the land, or the sale or proceeds thereof; and that it appeared by his own shewing, that he was not entitled to have the bond of William Miller delivered up to him. They also answered and denied the fraudulent combination charged in the bill, relative to the sale of the land.
The case was sent to this Court, and the Judges were divided in opinion upon the questions arising on the demurrer. The Chief-Justice and Judge Hall being of opinion, that the demurrer should be sustained, and the bill dismissed; and Judge Daniel, (who sat for Judge Henderson) being of opinion, that the demurrer should be overruled, and relief be decreed to the Complainant.
The bill is filed by a specific legatee, (198) who claims to be placed in the shoes of the creditors of the testator, and to have reimbursed out of the sales of the real estate, the value of his specific legacy, which has been taken to satisfy their demands. It appears from the case, that the testator gave to his executors, a general power to sell so much of his property as would pay his debts; and this must be taken as a charge upon all his estates, both real and personal. He then gave the Complainant a specific legacy of some negroes, and devised his land to Robert Fleming, an alien. He appointed Robert Fleming and Robert Harwell, his executors, who, by virtue of the power given to them by the will, and in their character of executors or trustees, sold the land to Johnson, who had full notice of the trusts of the will. Johnson has not paid the purchase-money to the trustees, nor to the creditors of the testator. He has applied the money to the payment of a debt which the trustee, Fleming owed, and for which payment *Page 153 
he was bound, as Fleming's security. He contends, that this payment, being made by the consent, or at the request of the trustee, discharges him from all further liability.
I will examine, 1st. Whether the complainant can be placed by this Court, in the situation of the creditors of the testator; and, 2dly, Whether he can sustain his bill against Johnson, under the particular circumstances of this case.
1st. It appears that the creditors of the testator had a lien on both the real and personal assets, for the payment of their debts. The Complainant, who was only a specific legatee, had not other lien, but on the specific property bequeathed to him. It is said by Lord Hardwicke, that "It being the object of a Court of Equity, that every claimant upon the assets of a deceased person, shall be satisfied, as far as such assets can, by any arrangement consistent with the nature of their respective claims, be applied in satisfaction thereof, it has been long settled, that where one claimant has more than one fund (199) to resort to, and another claimant only one, the first claimant shall resort to that fund on which the second has no lien." 2 Atk., 446. I Ves., 312. If, therefore, a specialty creditor, whose debt is a lien on the real assets, receives satisfaction out of the personal assets, a simple contract creditor shall stand in the place of the specialty creditor against the real assets, 1 Vern., 455. 1 Eq. Ca. Ab., 144. 2 Vern., 763. 2 Atk., 436; and legatees shall have the same equity. Ch. Ca., 117. 1 P. Wms., 730. So where lands are subject to the payment ofall debts, a legatee shall stand in the place of a simple contract creditor, who has been satisfied out of the personal assets. 3 P. Wms., 323. These authorities shew, that the Complainant has a right to stand in this Court in the place of creditors who have exhausted the fund set apart to satisfy him, and be reimbursed out of that fund which the creditors might have resorted to, but which they have left untouched.
2d. Has the Complainant, under the circumstances set forth in the bill, and admitted by the demurrer, a right to call on the Defendant, Johnson, for satisfaction? I admit that where the trust is general, as, to pay debts, the purchaser, although he has notice of them, is not obliged to see the money applied. 1 Bro. Ch., 186. 2 Fonb., 148. But I hold the money should be paid, and without any collusion of the trustee to defeat the object of the trust. It is held, that purchasing from an executor shall never protect any person who has full knowledge that the money will be misapplied. 2 Br. Ch., 434. 4 Br. Ch., 125, 130. 2 Vern., 616. 7 Ves., 152. Johnson has never paid the purchase money; or if he has, it was with a full knowledge of the *Page 154 
trust, and in direct violation of it. The payment of Fleming's debt, to which he was security, cannot screen him from paying the purchase money properly. I think the Complainant (200) has a right to resort to this money for satisfaction, and that the demurrer should be overruled.